Filed 10/21/24  P. v. Rodriguez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>DAVID ANTHONY RODRIGUEZ,<br><br>      Defendant and Appellant. | D082557<br><br><br>(Super. Ct. No. RIF125410) |


APPEAL from an order of the Superior Court of Riverside County, Mark E. Johnson, Judge.  Affirmed.

Garrick Byers, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, James M. Toohey and Daniel Rogers, Deputy Attorneys General, for Plaintiff and Respondent.

I

INTRODUCTION

David Anthony Rodriguez appeals from the summary denial of a
petition to vacate his conviction for the attempted murder of E.N. under
Penal Code section 1172.6.[1]  He contends we must reverse the summary
denial order because the trial court purportedly did not issue a full statement
of reasons for its order, as section 1172.6, subdivision (c) requires.  The
People argue we should affirm the summary denial order because Rodriguez
forfeited his appellate argument by failing to object to the alleged error in the
proceedings below, the trial court provided a sufficient statement of reasons
for its order, and any error was harmless.

We need not determine whether Rodriguez forfeited his argument or
whether the court fulfilled its statutory duty to provide a full statement of
reasons for its denial order.  Assuming for purposes of this appeal that
Rodriguez's argument is both preserved and meritorious, the court's alleged
error is harmless because Rodriguez is not entitled to resentencing as a
matter of law.  On these grounds, we affirm the summary denial order.

II

BACKGROUND

A. *The Shooting*[2]

On August 6, 2005, J.M. drove his pickup truck to a gas station.
Rodriguez sat in the front passenger seat and his brother, F.V., sat in the
back seat.  As J.M. was pumping gas into his truck, four or five gunshots

---

[1]    Further undesignated statutory references are to the Penal Code.

[2]    We take the facts of the crimes from our opinion in *People v. Rodriguez*
(Feb. 14, 2011, D056481) [nonpub. opn.] (*Rodriguez*) for background purposes
only.

erupted. E.N., an occupant of another vehicle, suffered a non-fatal gunshot wound to the head. E.N. was of Black Nigerian ancestry. A nearby truck was struck by a bullet as well. Witnesses claimed they saw someone firing a handgun through the window from the front passenger seat of J.M.'s truck, where Rodriguez was seated.

B. *The Trial and Direct Appeal*

In 2008, the district attorney filed an amended information charging Rodriguez—and *only* Rodriguez—with the willful, deliberate, and premeditated attempted murder of E.N. (count 1; §§ 664, 187, subd. (a)); shooting at an occupied motor vehicle (counts 2–3; § 246); possession of a firearm by a felon (counts 4 & 6; former § 12021, subd. (a)(1)); and participation in a criminal street gang, specifically the East Side Riva gang (counts 5 & 7; § 186.22, subd. (a)). It alleged Rodriguez personally and intentionally discharged a firearm causing great bodily injury in connection with counts 1 and 2 (§ 12022.53, subd. (d)), committed counts 1, 2, 3, and 6 for the benefit of a criminal street gang (§ 186.22, subd. (b)), and committed counts 1 and 2 because of the victim's race (§ 422.75, subd. (a)). Further, it alleged Rodriguez suffered a prior strike conviction (§§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1)) and a prior serious felony conviction (§ 667, subd. (a)).

After a trial, a jury found Rodriguez guilty of all charges and returned true findings on the firearm, gang, and victim-race allegations. In a bifurcated proceeding, the court found the allegations of a prior strike conviction and a prior serious felony conviction were true. The court sentenced Rodriguez to a determinate prison term of 19 years and a consecutive indeterminate prison term of 88 years to life. On direct appeal, our court modified the judgment to stay a consecutive 16-month prison term

3

imposed on count 7, and affirmed the judgment as modified. (*Rodriguez, supra*, D056481.)

C. *The Resentencing Proceedings*

In 2022, Rodriguez filed a petition seeking vacatur of his attempted murder conviction and resentencing. On the preprinted petition form, Rodriguez declared that a charging document was filed against him allowing the prosecution to proceed on a theory of attempted murder under the natural and probable consequences doctrine; he was convicted of attempted murder following a trial; and he could not presently be convicted of attempted murder because of changes made to sections 188 and 189, effective January 1, 2019. Additionally, he requested the appointment of legal counsel to represent him in the resentencing proceeding.

The trial court appointed counsel for Rodriguez. Rodriguez filed legal memoranda in support of his resentencing petition and argued that he stated a prima facie case for relief warranting issuance of an order to show cause. The district attorney filed a legal memorandum claiming Rodriguez did not state a prima facie case for relief. The district attorney also filed a request for judicial notice of our court's prior opinion in *Rodriguez, supra*, D056481, and the trial court files and records from Rodriguez's case (case RIF1215410), including the jury instructions that were given during trial.

At the prima facie hearing, the court granted the district attorney's request for judicial notice and denied the resentencing petition without issuing an order to show cause. At the outset of the hearing, the court stated it was relying on "the remittitur" from our court, the "whole court file," and the "jury instructions" to deny the petition. However, the district attorney urged the court not to rely on the remittitur to engage in factfinding or make a determination of eligibility for resentencing. The district attorney argued

4

the court should instead deny the petition based solely on the jury instructions from Rodriguez's trial because they did not permit the jury to find him guilty of attempted murder under a natural and probable consequences theory. In response, the court stated it would not consider the remittitur when ruling on the resentencing petition. Thereafter, the court denied the petition on grounds there was nothing "indicat[ing] that … the natural and probable consequences [doctrine], [the] felony murder [doctrine], or some other possible way to impute malice was involved in this case." After the hearing, the court issued a minute order denying the resentencing petition for the reasons "stated on the record."

III

DISCUSSION

A. *Senate Bill No. 1437*

After Rodriguez's judgment became final, the Legislature passed Senate Bill No. 1437, effective January 1, 2019. The Legislature approved the law to address a perceived "need ... to more equitably sentence offenders in accordance with their involvement in homicides." (Stats. 2018, ch. 1015, § 1(b).) In so doing, the Legislature recognized, "It is a bedrock principle of the law and of equity that a person should be punished for his or her actions according to his or her own level of individual culpability." (*Id.*, § 1(d).) "Senate Bill No. 1437 amended sections 188 (defining the 'malice' required for murder) and 189 (defining first and second degree murder) to eliminate murder liability based on the natural and probable consequences doctrine and to significantly narrow the scope of the felony-murder rule." (*People v. Morales* (2024) 102 Cal.App.5th 1120, 1129 (*Morales*).) As amended, section 188 states that, except in cases of felony murder (a theory of liability not implicated here), "a principal in a crime shall act with malice aforethought

5

[to be convicted of murder]. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

"Senate Bill [No.] 1437 also created a procedure (formerly at § 1170.95, now at § 1172.6) for defendants convicted of murder under prior law to seek retroactive relief if they 'could not be convicted under the law as amended.' " (*Morales, supra,* 102 Cal.App.5th at p. 1129.) "Effective January 1, 2022, Senate Bill No. 775, (2021–2022 Reg. Sess.) 'extended [retroactive] relief to defendants convicted of *attempted* murder based on the natural and probable consequences doctrine.' " (*Ibid.*; see *People v. Rodriguez* (2024) 103 Cal.App.5th 451, 457 ["Section 1172.6 permits a defendant convicted of attempted murder under the natural and probable consequences doctrine to petition for resentencing."].)

Relevant here, a petitioner convicted of "attempted murder under the natural and probable consequences doctrine" initiates the resentencing process by filing a petition averring that: (1) a charging document "was filed against the petitioner that allowed the prosecution to proceed under a theory of … attempted murder under the natural and probable consequences doctrine," (2) "[t]he petitioner was convicted of … attempted murder … following a trial," and (3) "[t]he petitioner could not presently be convicted of … attempted murder" because of the changes to section 188 or 189 that were implemented by Senate Bill No. 1437. (§ 1172.6, subds. (a)(1)–(3), (b)(1).)

"When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' " (*People v. Strong* (2022) 13 Cal.5th 698, 708, quoting § 1172.6, subd. (c).) The prima facie inquiry is a "limited" one. (*People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).) " ' "[T]he court takes petitioner's factual

6

allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause." ' " (*Ibid.*)  Unless the parties waive an evidentiary hearing and stipulate that the petitioner is entitled to the relief sought, the court must then schedule an evidentiary hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction, recall the sentence, and resentence the petitioner on any remaining counts.  (§ 1172.6, subds. (c), (d)(1).)

" 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis, supra*, 11 Cal.5th at p. 971.)  In other words, a court should deny a resentencing petition at the prima facie review stage, without issuing an order to show cause, "if the record of conviction conclusively establishes that the petitioner is ineligible for relief as a matter of law." (*People v. Gaillard* (2024) 99 Cal.App.5th 1206, 1211.)  "The record of conviction includes, inter alia, jury instructions and verdict forms."  (*People v. Morris* (2024) 100 Cal.App.5th 1016, 1023.)  "If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so."  (§ 1172.6, subd. (c).)

B. *The Trial Court's Purported Failure to Provide a Full Statement of Reasons for Its Denial Order is Harmless Error at Most*

Rodriguez claims the trial court erred when it denied his resentencing petition at the prima facie stage because the court did not issue a statement fully setting forth its reasons for the summary denial order, as 1172.6, subdivision (c) requires.  In response, the People claim Rodriguez forfeited his argument by not objecting to the alleged error or asking the trial court for a statement of reasons.  They also argue the court provided a sufficient

7

statement of reasons because, at the prima facie hearing, the court opined that it was basing its decision on the jury instructions that were given during trial.  Finally, they contend any error was harmless because Rodriguez is ineligible for resentencing as a matter of law.

We will assume for purposes of this appeal, without deciding, that Rodriguez has preserved his argument for our consideration and the trial court breached its statutory duty to provide a full statement of reasons for its denial order.  Even so, we shall affirm the summary denial order because, as the People persuasively argue, Rodriguez has not carried his burden of establishing that the trial court's purported error was prejudicial.

As both parties agree, we apply the state-law prejudice standard derived from *People v. Watson* (1956) 46 Cal.2d 818 to determine whether a petitioner has been prejudiced by a procedural error that was committed at the prima facie review stage of the resentencing process.  (See *Lewis, supra*, 11 Cal.5th at pp. 973–974; *People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1239 (*Beaudreaux*).)  Under that standard, the petitioner must " 'demonstrate there is a reasonable probability that in the absence of the error he … would have obtained a more favorable result.' " (*Lewis*, at p. 974.)  In the present context, the petitioner must show a reasonable probability that, but-for the asserted error, the court would not have summarily denied the resentencing petition.  (*Ibid.*)  Rodriguez has not carried this burden.

Although Rodriguez filed a facially sufficient resentencing petition, his record of conviction conclusively negates his allegation that he "could not presently be convicted of … attempted murder because of [the] changes to … [s]ection 188 or 189" that were effectuated by Senate Bill No. 1437.  (§ 1172.6, subd. (a)(3).)  Stated differently, Rodriguez is categorically ineligible to be resentenced because his record of conviction shows the jury necessarily found

8

he directly perpetrated the willful, deliberate, and premeditated attempted murder of E.N.—i.e., it found him guilty of attempted murder under a theory of liability that is valid under current law. (*Morales, supra*, 102 Cal.App.5th at pp. 1130–1131 ["if the record of conviction … conclusively establishes the jury found facts sufficient to support [the petitioner's] conviction of attempted murder under current law, he has not made his prima facie case"].)

Section 1172.6 "applies by its terms only to attempted murders based on the natural and probable consequences doctrine." (*People v. Coley* (2022) 77 Cal.App.5th 539, 548 (*Coley*); see *People v. Lovejoy* (2024) 101 Cal.App.5th 860, 865 [a resentencing "petition [is] properly denied as to [an] attempted murder conviction … if the record affirmatively demonstrates the jury did not rely on the natural and probable consequences doctrine"].) Here, the jury could not have convicted Rodriguez under the now-invalid theory of natural and probable consequences attempted murder liability because the court never instructed the jury on the natural and probable consequences doctrine. It also did not instruct the jury on aiding and abetting principles, felony murder, or any other theory by which malice might have been imputed to Rodriguez. Rather, it gave instructions (CALCRIM Nos. 600 and 601) allowing the jury to find Rodriguez guilty of willful, deliberate, and premeditated attempted murder only if the jury found that he was the direct perpetrator of the shooting and he intended to kill his victim.[3]

---

[3] CALCRIM No. 600 ("Attempted Murder"), stated in part, "The defendant is charged in Count 1 with attempted murder. [¶] To prove that the defendant is guilty of attempted murder, the People must prove that: [¶] 1. The defendant took at least one direct but ineffective step toward killing another person; [¶] AND [¶] 2. The defendant intended to kill that person."

9

Because the jury was never instructed it could find Rodriguez guilty of attempted murder under the natural and probable consequences doctrine, the record conclusively shows that he could be convicted of attempted murder under current law. (*Coley, supra*, 77 Cal.App.5th at p. 548 [summary denial of petition to resentence attempted murder conviction proper because jury was not instructed on natural and probable consequences doctrine]; *People v. Cortes* (2022) 75 Cal.App.5th 198, 205 ["the jury was not instructed on any theory of liability for murder or attempted murder that required that malice be imputed to [petitioner]. He is therefore ineligible for resentencing"]; see *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1167 ["If … the trial court had given no instructions regarding felony murder or murder under a natural and probable consequences theory, there is no question [petitioner] would be unable to make a prima facie showing that he is entitled to relief"]; accord *People v. Montes* (2021) 71 Cal.App.5th 1001, 1007 ["Because appellant's jury was instructed on the natural and probable consequences doctrine for attempted murder, appellant may establish a prima facie showing of eligibility."].) And, because Rodriguez is ineligible for resentencing, the trial court's purported failure to articulate its full statement of reasons for its summary denial order was, at most, harmless error subject to affirmance.

Rodriguez proffers two arguments to try to circumvent this outcome. Neither argument is persuasive.

---

CALCRIM No. 601 ("Attempted Murder: Deliberation and Premeditation") provided in part, "If you find the defendant guilty of attempted murder under Count 1, you must then decide whether the People have proved the additional allegation that the attempted murder was done willfully, and with deliberation and premeditation. [¶] The defendant acted willfully if he intended to kill when he acted. The defendant deliberated if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant premeditated if he decided to kill before acting."

10

First, although Rodriguez concedes the court never instructed the jury on the natural and probable consequences doctrine, he claims the jury might nevertheless have relied on that doctrine to convict him of attempted murder because the court instructed the jury with the pattern firearm enhancement instruction, CALCRIM No. 3149 (titled, "Personally Used Firearm: Intentional Discharge Causing Injury or Death"). That instruction contains isolated references to the words "natural" and "probable consequence," which bear some superficial resemblance to the term, "natural and probable consequences doctrine." In relevant part, the firearm enhancement instruction states, "If you find the defendant guilty of the crimes charged in Counts 1 or 2, you must then decide whether, for each crime, the People have proved the additional allegation that the defendant personally and intentionally discharged a firearm during that crime causing great bodily injury. [¶] … [¶] To prove this allegation, the People must prove that: [¶] 1. The defendant personally discharged a firearm during the commission or attempted commission of that crime; [¶] 2. The defendant intended to discharge the firearm; [¶] AND [¶] 3. The defendant's act caused great bodily injury to a person who was not an accomplice to the crime. [¶] … [¶] *An act causes great bodily injury if the injury is the direct, natural, and probable consequence of the act* and the injury would not have happened without the act. *A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes.* In deciding whether a consequence is natural and probable, consider all the circumstances established by the evidence."

There is no realistic possibility Rodriguez's jury relied on the firearm enhancement instruction to convict him as an aider and abettor to the attempted murder under the now-invalid natural and probable consequences

doctrine. The natural and probable consequences doctrine is a theory of accomplice liability whereby " 'an accomplice is guilty not only of [an] offense he or she directly aid[s] or abet[s] (i.e., the target offense), but also of any other offense committed by the direct perpetrator that [is] the "natural and probable consequence" of the crime the accomplice aid[s] and abet[s] (i.e., the nontarget offense).' " (*People v. Curiel* (2023) 15 Cal.5th 433, 449.) Although the firearm enhancement instruction uses the vaguely similar terminology, "direct, natural, and probable consequence," it does so solely for the purpose of defining the *causation* element of the *firearm enhancement* alleged against Rodriguez. Nothing in the instruction allowed the jury to find Rodriguez guilty of the substantive offense of attempted murder under the natural and probable consequences doctrine, which is a distinct legal concept altogether. (See *People v. Carr* (2023) 90 Cal.App.5th 136, 146 [no reasonable jury would impute malice to resentencing petitioner based on pattern jury instruction on causation "requiring that death be 'a direct, natural and probable consequence of the [defendant's] act or omission' "].) Indeed, by its plain terms, the firearm enhancement instruction applied only *after* the jury had already decided Rodriguez was guilty of attempted murder.

Second, Rodriguez contends the jury might have convicted him as an aider and abettor of the attempted murder, not the direct perpetrator, and that it may have done so under the now-invalid natural and probable consequences theory of liability, because the court gave the jury a pattern instruction on how to consider possible accomplice testimony, CALCRIM No. 334. That instruction directed the jury to decide whether either of two witnesses, F.V. and J.M., was an accomplice to the charged crimes and, if it decided one of them was an accomplice, it could not convict Rodriguez of the crimes based on the testimony of that witness alone. The instruction defined

12

an accomplice as someone who "personally committed the crime" or intentionally aided and abetted the commission of the crime with knowledge of the criminal purpose of the person who committed the crime.[4]

No reasonable juror could have found that Rodriguez aided and abetted the attempted murder of E.N. under the natural and probable consequences doctrine, rather than being the direct perpetrator of the crime, based on the pattern instruction on accomplice testimony. (See *Beaudreaux, supra*, 100 Cal.App.5th at p. 1247 [rejecting argument that pattern jury instruction on accomplice testimony permitted jury to convict petitioner of murder as aider and abettor, rather than direct perpetrator].) The accomplice testimony instruction required the jury to determine whether two witnesses were accomplices to Rodriguez—not to determine whether Rodriguez was an accomplice to either of the testifying witnesses—and it governed only the manner by which the jury could consider the testimony of the two witnesses. Nothing in the instruction provided the jury any avenue to find Rodriguez guilty of attempted murder as an aider and abettor, let alone under a theory of vicarious liability like the natural and probable consequences doctrine. No

---

[4]    In pertinent part, CALCRIM No. 334 ("Accomplice Testimony Must Be Corroborated: Dispute Whether Witness Is Accomplice") states, "Before you may consider the testimony of [F.V.] and [J.M.] as evidence against the defendant, you must decide whether [F.V.] and [J.M.] were accomplices to those crimes. A person is an accomplice if he or she is subject to prosecution for the identical crime charged against the defendant. Someone is subject to prosecution if he or she personally committed the crime or if: [¶] 1. He or she knew of the criminal purpose of the person who committed the crime; [¶] AND [¶] 2. He or she intended to, and did in fact, aid, facilitate, promote, encourage, or instigate the commission of the crime or participate in a criminal conspiracy to commit the crime. [¶] … [¶] If you decide that a witness was not an accomplice, then supporting evidence is not required and you should evaluate his or her testimony as you would that of any other witness. [¶] If you decide that a witness was an accomplice, then you may not convict the defendant of the charges based on his or her testimony alone."

other instruction allowed the jury to do so either. As noted, the court did not provide the jury any instructions on aiding and abetting principles or the natural and probable consequences doctrine. Thus, the record of conviction confirms the jury necessarily found Rodriguez guilty of attempted murder because he was the direct perpetrator of the crime.

Because the jury necessarily found that Rodriguez directly perpetrated the attempted murder of E.N., he is ineligible for resentencing under section 1172.6, and the trial court's alleged failure to articulate its reasons for its summary denial order was, at most, harmless error.

IV

DISPOSITION

The order is affirmed.

McCONNELL, P. J.

WE CONCUR:


DATO, J.


DO, J.

14
